**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ADAM SAUER and LISA LAM, ~~individually~~ and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DOREL HOME FURNISHINGS INC. D/B/A COSCO HOME AND OFFICE PRODUCTS,<br><br>Defendant. | Case No.:4:25-cv-01277-SRC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Adam Sauer and Lisa Lam ("Plaintiffs"), individually and on behalf of all others similarly situated, brings~~s~~ this First Amended Class Action Complaint against Defendant Dorel Home Furnishings Inc. d/b/a Cosco Home and Office Products ("Dorel" or "Defendant")[1] and alleges the following based on personal knowledge as to ~~himself~~themselves, and as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. This is a proposed class action arising from the dangerous design and prolonged concealment of a known defect in Defendant's Cosco 2-Step Kitchen Steppers ("Products")[2]. Specifically, Defendant designed, marketed, distributed, and sold the Products with defective safety bar that can become detached or break ("Defect").[3]

[1] Plaintiff reserves the right to amend the complaint to include any additional responsible parties or entities as the evidence or information may arise throughout discovery.
[2] This recall involves the Cosco 2-step kitchen stepper, a folding stepstool with two steps and a safety bar that attaches to the back of the product, with model numbers 11349WHG1E, 11349GRN1E, 11349NVY1E, 11349WHG2, 11349GRN4, 11349GRN12, 11349WHG12C, 11349WHG12W, 11349WHG4F, and 11349CBWH4T.
[3] *See* https://www.cpsc.gov/Recalls/2025/Dorel-Home-Furnishings-Recalls-Cosco-2-Step-Kitchen-Steppers-Due-to-Fall-and-Injury-Hazards (last accessed August 22, 2025).

2. Defendant specifically touted these Products as being "designed with safety in mind, the railings provide perfect support while the locking safety bar keeps kids from falling out."[4] To the contrary, these Products are inherently defective and create a serious safety risk, especially for children. This is damning for Defendant, who markets the Products as safe to use, especially for children, prominently in the Products' labels and advertising.

3. ~~O~~Defendant confirmed the Products' Defect on July 31, 2025, ~~the CPSC,~~ when together with ~~Defendant~~ the CPSC, Defendant announced the recall ("Recall") of approximately 302,000 of the Products sold at major retailers nationwide since February 2021 for between $56 and $70.[5]

4. At the time of the Recall, Defendant had received more than 30 reports of the safety bar breaking or becoming detached, and two of these incidents involved head injuries.[6]

5. Per the Recall, consumers are advised to stop using the safety bar on the recalled kitchen stepper immediately and store the stepper away from children until repaired.[7] The Recall further instructs consumers to contact Dorel to receive a free repair kit. The repair kit includes a sliding locking mechanism that attaches to the safety bar to prevent the safety bar from detaching or breaking during use.[8]

6. The Recall fails to offer ***any monetary relief*** to Plaintiffs and Class Members who purchased the defective Products.

7. Defendant knew or should have known of this safety Defect, yet it did nothing for years.

---

[4] https://www.coscoproducts.com/collections/step-stools/products/cosco-kitchen-stepper%E2%84%A2-folding-step-stool?variant=40255842255033 (last accessed August 22, 2025).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*

8. Worse, Defendant specifically marketed these Products as safe for everyone, especially children. For example, Defendant stated, "the COSCO Kitchen Stepper folding step stool is a great tool for the entire family! Involve your child in the everyday work of the household by allowing them to safely stand at countertop height."[9]

9. Defendant knowingly continued to design, manufacture, market, and sell the defective Products, promoting the defective safety bar as a material feature of the Product.

~~10.~~ The Defect existed at the point of purchase.

10.

11. When purchasing the Products, Plaintiffs and Class Members trusted Defendant and its representations that the Products would be safe to use as intended. Indeed, Defendant alone possessed superior knowledge of the product, its design, and manufacturing and either knew or should have known of the Defect through testing the Products prior to offering them for sale to the public.

12. Defendant's Recall is inadequate and fails to provide any monetary relief to Plaintiffs or other purchasers of the defective Products. Additionally, it imposes an additional burden upon Plaintiffs and Class Members by requiring them to engage in a "self-repair." Having to do this was never a part of "the bargain" Plaintiffs and Class Members intended when the purchased the Products.

~~11.~~13. Plaintiffs a paid price premium for the Products because of Defendant's safety representations and omissions compared to other similar products on the market.

14. Had Plaintiffs and Class Members known about the Defect, they would not have purchased the Products or certainly would have paid less.

[9] *See, e.g.*, https://www.coscoproducts.com/collections/step-stools/products/cosco-kitchen-stepper%E2%84%A2-folding-step-stool?variant=40255842255033 (last accessed August 22, 2025).

15. A step stool's safety is a material fact in Plaintiffs' and all reasonable consumers' purchasing decisions. Plaintiffs and Class Members paid more for Defendant's Products based on the safety claims and additional safety features.

~~12.~~16. Plaintiffs and Class Members suffered a concrete resent economic injury because they purchased and currently possess defective Products that are unsafe, unmerchantable, and diminished in value. Defendant's recall does not remedy this injury because it requires self-repair and provides no refund or replacement.

~~13. Defendant's Recall is inadequate and fails to provide any monetary relief to Plaintiff or other purchasers of the defective Products.~~

~~14.~~17. This action seeks to hold Defendant accountable for its conscious decision to use a dangerous design, conceal the known hazard associated with the Defect, and its insufficient recall remedy.

## PARTIES

~~***PLAINTIFF***~~

18. At all relevant times, Plaintiff Adam Sauer was and is a resident and citizen of Marysville, California. ~~Plaintiff purchased a Cosco 2-Step Kitchen Stepper on or about January 13, 2025 from Amazon for approximately $58.~~

19. At all relevant times, Lisa Lam was and is a resident and citizen of Staten Island, New York.

~~15.~~

~~16. Plaintiff would not have purchased or used the Product if he had known about the safety Defect.~~

***~~DEFENDANT~~***

~~17.~~20. Defendant Dorel Home Furnishings, Inc. d/b/a/ Cosco Home and Office Products is a Delaware corporation with its principal place of business located at 410 E First Street S, Wright City, Missouri. Defendant or its subsidiaries are involved in the design, manufacturing, marketing, sale, and distribution of the recalled Products.

~~18.~~21. Upon belief or information, until July 2025, Defendant directly or through third-party entities, designed, manufactured, distributed, marketed, advertised, and sold the recalled Products in all 50 states, in stores such as Walmart, Target, Home Depot, Lowes, and others, as well as online through Amazon, Wayfair, and Overstock.

**JURISDICTION AND VENUE**

~~19.~~22. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act because: (1) there are 100 or more putative Class Members; (2) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (3) there is diversity because Plaintiff and at least one Defendant are citizens of different states.

~~20.~~23. This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and is therefore a citizen of Missouri; does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sale of products in this District, and has engaged in the unlawful practices described in this Complaint within this District.

24. Under 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, as Defendant regularly transacts business in this District, is headquartered in this District, and Defendant has intentionally availed itself of the laws and markets within this District.

~~21.~~25. The deceptive conduct and omissions at issue emanated from Defendant's Missouri headquarters, where the Products' design, marketing, and recall strategy decisions were made. These Missouri-based decisions caused injury to consumers nationwide.

**COMMON FACTUAL ALLEGATIONS**

~~22.~~26. Since 1962, Defendant has been globally recognized as a leading furniture brand producing quality, ready-to-assemble furniture for every home, room, lifestyle, and budget.[10] Defendant touts that it has a "reputation for simplicity, durability and genuine value" and that it "engineers and manufactures products with practical and innovative design that continue to perform year after year."[11]

~~23.~~27. From approximately 2021 through July 2025, Defendant manufactured, marketed, and sold a line of step stools called the Cosco 2-Step Kitchen Stepper.

~~24.~~28. Defendant marketed this line of step stools, including the Products at issue, to children and families by specifically touting the defective safety bar on the Product. For example, Defendant claims:

> The COSCO Kitchen Stepper folding step stool is a great tool for the entire family! Involve your child in the everyday work of the household by allowing them to safely stand at countertop height. The wide base, large slip-resistant platform step and durable construction means this stool can grow with your child and be used into adulthood.[12]

~~25.~~29. Defendant goes on to specifically claim, "the kitchen helper has been designed with safety in mind, the railings provide perfect support while the locking safety bar keeps kids from falling out."[13]

---

[10] https://www.dorelhome.com/
[11] https://www.dorelhome.com/pages/about-dorel-home
[12] https://www.coscoproducts.com/collections/step-stools/products/cosco-kitchen-stepper%E2%84%A2-folding-step-stool?variant=40255842255033 (last accessed August 22, 2025).
[13] *Id.*

~~26.~~30. The CPSC announced a nationwide recall of the affected Products on July 31, 2025, affecting more than 300,000 units sold in the United States ("Recall").[14] The Recall covers Products sold between 2021 and 2025 through major retailers including Walmart, Amazon, Lowes, and others.[15]

~~27.~~31. Defendant marketed the Products as safe and durable for not just adults but also children.

32. The CPSC recall remedy is a free "repair kit" that includes a kind of sliding locking mechanism for the safety bar and installation instructions. However, this purported remedy requires affirmative consumer action and does not automatically fix the hazard. First, Defendant~~, however,~~ has yet to provide evidence that the "repair" would allow the Product to function as intended and not present additional safety issues. Second, it requires the consumer to correctly install the repair kit for the Products to be used as originally intended – assuming the repair kit is effective.

~~28.~~33. The Recall remedy is wholly insufficient, and it offers no monetary relief whatsoever to Plaintiffs and Class Members.

34. Contrary to Defendant's representations to consumers promising safety and durability, Defendant chose to ignore the serious safety hazards presented by the uniform Defect present in each Product.

~~29.~~35. Defendant owed an independent duty to disclose known safety hazards in products marketed for child use, separate and apart from any contractual duty, because its omissions created foreseeable physical risks.

---

[14] *See* https://www.cpsc.gov/Recalls/2025/Dorel-Home-Furnishings-Recalls-Cosco-2-Step-Kitchen-Steppers-Due-to-Fall-and-Injury-Hazards (last accessed August 22, 2025).
[15] *Id.*

~~30.~~36. Defendant, during all relevant times, was under a federal duty to evaluate the Products for unreasonable risks. Specifically, federal regulations require "[e]very manufacturer, distributor, and retailer of a consumer product distributed in commerce who obtains information which reasonably supports the conclusion that its product creates an unreasonable risk of serious injury or death is required to notify the [CPSC] immediately."[16] Defendant is obligated under this regulation to determine whether a product presents an unreasonable risk by examining the "utility of the product or the utility of the aspect of the product that causes the risk, the level of exposure of consumers to the risk, the nature and severity of the hazard presented, and the likelihood of resulting serious injury."[17]

~~31.~~37. Accordingly, Defendant had a duty to investigate and disclose all safety hazards regarding the Products, including the Defect.

38. As a direct result of Defendant's conduct, Plaintiffs and Class Members suffered economic losses by purchasing the Products at a price premium. Had Plaintiffs and Class Members known the truth about Defendant's mislabeled and defective Products, they would not have purchased them or paid less for them.

**PLAINTIFFS' ALLEGATIONS**

***Plaintiff Adam Sauer's experience***

39. Plaintiff Adam Sauer was and is a resident and citizen of Marysville, California.

40. Plaintiff Sauer purchased a Cosco 2-Step Kitchen Stepper on or about January 13, 2025 from Amazon for approximately $58.

[16] *See*. 16 C.F.R. § 1115.6(a) (citing 15 U.S.C. 2064(b)(3)).
[17] *Id.*

41. Plaintiff Sauer, like all reasonable consumers, believed at the point of purchase that the Cosco 2-Step Kitchen Stepper was safe to use as intended based on Defendant's safety misrepresentations.

42. When purchasing the Product, Plaintiff Sauer read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Product was adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the Product were true.

43. Defendant's safety representations were material to Plaintiff's decision to purchase. At no point did Defendant disclose any risk that the safety bar could detach or break.

44. Plaintiff Sauer read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Product, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Product, Plaintiff Sauer would not have been willing to purchase the Product.

45. The remedy Defendant has offered to Plaintiff Sauer through the Recall—that is, providing a free repair kit —is entirely inadequate. The purported remedy offered by Defendant does not actually address the Defect or make the Product safe, and it certainly does not remedy the false representations and omissions Defendant has made regarding the Product. It does not make Plaintiff Sauer whole.

46. Plaintiff Sauer paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff was injured and lost money due to Defendant's mislabeling and deceptive conduct.

***Plaintiff Lisa Lam's experience***

47. At all relevant times, Lisa Lam was and is a resident and citizen of the Staten Island, New York.

48. Plaintiff Lam purchased a Cosco 2-Step Kitchen Stepper on or about August 24, 2024, from Amazon for approximately $56.

49. Plaintiff Lam reports experiencing the safety bar detaching from the stepper and falling which is precisely the defect at issue in this case causing minor injuries and pain.

50. Plaintiff Lam, like all reasonable consumers, believed at the point of purchase that the Cosco 2-Step Kitchen Stepper was safe to use as intended based on Defendant's safety misrepresentations.

51. When purchasing the Product, Plaintiff Lam read and reviewed the accompanying labels and disclosures and understood them as representations by Defendant that the Product was adequately manufactured, labeled, free from defects, and that the misrepresentations concerning the safety of the Product were true.

52. Defendant's safety representations were material to Plaintiff's decision to purchase. At no point did Defendant disclose any risk that the safety bar could detach or break.

53. Plaintiff Lam read and relied on Defendant's misrepresentations and material omissions when deciding to purchase the Product, and these misrepresentations and material omissions were part of the basis of the bargain. Had Defendant not made the false, misleading, and deceptive misrepresentations and material omissions alleged herein regarding the Product, Plaintiff Lam would not have been willing to purchase the Product.

54. The remedy Defendant has offered to Plaintiff Lam through the Recall—that is, providing a free repair kit —is entirely inadequate. The purported remedy offered by Defendant does not actually address the Defect or make the Product safe, and it certainly does not remedy the

false representations and omissions Defendant has made regarding the Product. It does not make Plaintiff Lam whole.

~~32.~~55. Plaintiff Lam paid a price premium for the Product based on Defendant's misrepresentations and material omissions. Accordingly, Plaintiff Lam was injured and lost money due to Defendant's mislabeling and deceptive conduct.

**TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

~~33.~~56. Defendant has continuously marketed and sold the dangerous Products to unsuspecting customers. It continuously represented that the Products are safe and suitable for not just adults but also children.

~~34.~~57. By continuously repeating these false representations and failing to disclose that the Product contained a serious safety hazard, Defendant engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Defendant might seek to apply.

~~35.~~58. As the creator and manufacturer of the Products, Defendant has had actual knowledge since at least 2021 that the Products are~~is~~ defectively designed and exposes children to a significant risk of serious injury and death.

~~36.~~59. Defendant's knowledge of the Defect is evidenced by, amongst other things, the Recall Notice and more than 30 reports of the safety bar failing.

~~37.~~60. Thus, at all relevant times, Defendant indisputably possessed continuous knowledge of the material dangers posed by the Products, and yet Defendant knowingly continued to allow the sale of the Products. Plaintiff~~'~~s' and other Class Members' claims are not time-barred.

~~38.~~61. Moreover, even after the Recall, there is no evidence that news of the Recall Notice reached all Product owners.

~~39.~~62. Plaintiffs and other Class members could not have reasonably discovered, and could not have known, facts that would have caused a reasonable person to suspect that Defendant knowingly failed to disclose material information within its knowledge about a dangerous defect to consumers in the United States and elsewhere. Therefore, no potentially relevant statute of limitations should apply.

~~40.~~63. Throughout the time period relevant to this action, Defendant concealed from and failed to disclose to Plaintiffs and the other Class Members vital information about the Defect described herein.

~~41.~~64. Defendant kept Plaintiffs and the other Class Members ignorant of vital information essential to the pursuit of their claims. As a result, neither Plaintiffs nor the other Class Members could have discovered the Defect, even upon reasonable exercise of due diligence.

~~42.~~65. Defendant had a duty to disclose to Plaintiffs and the Class Members the true quality and nature of the Products, that the Products haves a uniform dangerous Defect, and that they~~it~~ poses safety concerns and are,~~is~~ in fact, dangerous.

~~43.~~66. Instead, Defendant continued to market the Products as safe and suitable for their~~its~~ intended purpose, and marketed the Products specifically to families with children, in order to further profits by charging a price premium. Defendant knew and intended that the Product's' defective safety bar was an important and material factor in the consumer's choice to purchase the Products and that consumers, like Plaintiffs, would~~ill~~ pay a higher price for ~~products with~~ added safety features like the Products' defective safety bar.

~~44.~~67. Plaintiffs and the other Class Members justifiably relied on Defendant to disclose the true dangerous nature of the Products they purchased and/or owned because that Defect was not discoverable by Plaintiffs and the other Class Members through reasonable efforts.

~~45.~~68. Defendant's affirmative acts of concealment, including its continued marketing of the Defective Product as safe, durable, reliable, and fit for its intended purpose while possessing knowledge of the Defect further support estoppel and tolling of any applicable limitations period.

**CLASS ACTION ALLEGATIONS**

~~46.~~69. Plaintiffs brings this action on behalf of ~~himself~~ themselves and the following Classes under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

> All persons in the United States who purchased the Products for personal use and not for resale during the fullest period provided by law ("Nationwide Class").

~~47.~~70. Plaintiffs also brings this action on behalf of ~~himself~~ themselves and the following Subclasses under Rule 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure:

**California Subclass**

> All persons in California who purchased the Product for personal use and not for resale during the fullest period provided by law ("California Class").

**New York Subclass**

> All persons in New York who purchased the Product for personal use and not for resale during the fullest period provided by law ("New York Class").

~~48.~~71. Excluded from the Class are: (a) any officers, directors or employees, or immediate family members of the officers, directors, or employees of Defendant or any entity in which Defendant has a controlling interest; (b) any legal counsel or employee of legal counsel for the Defendant; (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their immediate family members; and (d) any person who has previously settled claims related to the Hazard with Defendant.

~~49.~~72. Plaintiffs reserves~~s~~ the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

~~50.~~73. **Numerosity**. Class Members are so numerous and geographically dispersed that joinder of all Class Members is impracticable. While the exact number of Class Members remains currently unknown, upon information and belief, there are thousands, if not hundreds of thousands, of putative Class Members. Moreover, the number of members of the Class may be ascertained from Defendant's books and records, as well as third-party retailers. Class Members may be notified of the pendency of this action by mail and/or electronic mail, which can be supplemented if deemed necessary or appropriate by the Court with published notice.

~~51.~~74. **Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist for all Class Members and predominate over any questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to, the following:

a. Whether the Products contained the Defect alleged herein;

b. Whether Defendant knew or should have known of the Defect;

c. Whether Defendant had a duty to disclose the Defect to consumers;

d. Whether Defendant's conduct violated the CLRA and other consumer protection statutes alleged herein;

e. Whether Defendant's representations and omissions were misleading or deceptive;

f. Whether Defendant's conduct was unfair or illegal;

g. Whether Class Members suffered economic injury;

h. Whether Defendant's conduct violates public policy;

i. Whether Plaintiffs and putative members of the Class have suffered an ascertainable loss of monies or property or other value as a result of Defendant's acts and omissions of material facts;

j. Whether Defendant was unjustly enriched at the expense of Plaintiff and members of the putative Class in connection with selling the Defective Product; and

k. Whether Plaintiffs and members of the putative Class are entitled to monetary damages and, if so, the nature of such relief;

~~52.~~75. **Typicality.** Plaintiff's' claims are typical of those of the absent Class Members in that Plaintiffs and the Class Members each purchased and used the Products, and each sustained damages arising from Defendant's wrongful conduct, as disclosed herein. Plaintiffs shares the aforementioned facts and legal claims or questions with the putative Class Members. Plaintiffs and all members of the putative Class have been similarly affected by Defendant's common misconduct alleged herein. Plaintiffs and all members of the putative Class sustained monetary and economic injuries including—but not limited to—ascertainable losses resulting from Defendant's deceptive omissions concerning the Product's' safety and its ability, as well as the proposed repair remedy's ability, to function as intended.

~~53.~~ **Adequacy**. Plaintiffs will fairly and adequately represent and protect the interests of the members of the putative Class. Plaintiffs haves retained counsel with substantial experience in handling complex, class action litigation, including complex questions that arise in this type of consumer protection litigation. Further, Plaintiffs and their~~her~~ counsel are committed to the vigorous prosecution of this action. Plaintiffs haves no conflicts of interest or interests adverse to those of the putative Class.

76.

~~54.~~ **Insufficiency of Separate Actions**. Absent a class action, Plaintiffs and members of the Class will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

77.

~~55.~~78. **Superiority**. A class action is superior to any other available method for the fair and efficient adjudication of the present controversy for at least the following reasons:

a. The damages suffered by each individual member of the putative Class do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

b. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

c. The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class;

d. Individual joinder of all members of the Class is impracticable;

e. Absent a Class, Plaintiffs and members of the putative Class will continue to suffer harm as a result of Defendant's unlawful conduct; and

f. This action presents no manageability concerns that would impede its treatment as a class action and, in fact, is the most appropriate and efficient

method by which Plaintiffs and the members of the putative Class can obtain redress for the harm caused by Defendant's misconduct.

~~56.~~79. In the alternative, the Class may be certified for the following reasons:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication concerning individual members of the Class, which would establish incompatible standards of conduct for Defendant; and

b. Adjudications of claims of the individual members of the Class against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Class who are not parties to the adjudication and may substantially impair or impede the ability of other putative Class Members to protect their interests.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATIONS OF CALIFORNIA UNFAIR COMPETITION LAW
### CAL. BUS. & PROF. CODE
### §§ 17200, *et seq.* ("UCL")

(On Behalf of Plaintiff Sauer and the California Subclass)

~~57.~~80. Plaintiff Sauer hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

~~58.~~81. Plaintiff Sauer brings this count on behalf of himself and the California Subclass against Defendant.

~~59.~~82. Defendant is a "business" as defined by § 17200.

~~60.~~83. The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

~~61.~~84. Defendant's acts and omissions alleged herein, specifically Defendant's violations of the California Legal Remedies Act ("CLRA"), as expanded on *infra*, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL.

~~62.~~85. **Unlawful:** Defendant's actions and omissions have violated and continue to violate the "unlawful" prong of the UCL by advertising, marketing and selling defective Products. Additionally, Defendant has engaged in unlawful conduct by violating the CLRA, the Song-Beverly Consumer Warranty Act, and the common law (as alleged in this Complaint).

~~63.~~86. **Deceptive:** As further alleged herein, Defendant's conduct also violates the "deceptive" prong of the UCL in that Defendant's representations that its Products were safe and durable for children and families to use was false and misleading.

~~64.~~87. **Unfair:** Defendant's conduct is "unfair" in contravention of the UCL because it violates California public policy, legislatively declared in both the CLRA and the Song-Beverly Consumer Warranty Act. The CLRA prohibits unfair and deceptive business practices. Defendant violated CLRA because it sold defective Products as further set forth herein. The Song-Beverly Consumer Warranty Act requires a manufacturer to ensure that goods it places on the market are

fit for their ordinary and intended purposes. Defendant violated the Song-Beverly Act because the defective Products contain a material and unreasonable safety hazard, as set forth herein.

~~65.~~88. Defendant's conduct is also unlawful, deceptive and unfair because Defendant made misleading representations. For example, Defendant stated that its Products were safe for children and safe and durable for families to use. To the contrary, the Products contain a safety hazard that can cause serious injury to both children and adults.

~~66.~~89. Defendant also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiff Sauer and the California Subclass members. Defendant engaged in unfair business practices and acts in at least the following respects:

a. Defendant promoted and sold defective Products, which it knew contained a safety Defect that constitutes a material and unreasonable safety hazard to consumers and children;

b. Defendant promoted and sold the defective Products despite knowing that users do not expect the Products to contain a material and unreasonable safety hazard;

c. Defendant failed to exercise adequate quality control and due diligence over the defective Products before placing them on the market;

~~67.~~90. The gravity of harm to Plaintiff Sauer~~s~~ and the California Subclass members resulting from Defendant's unfair conduct outweighs the public utility of Defendant's conduct. The practice of selling defective Products that contain an unreasonable safety hazard, and specifically marketing those defective Products to families with children, harms the public at large and is part of a common and uniform course of wrongful conduct.

~~68.~~91. The harm from Defendant's conduct was not reasonably avoidable by Plaintiff Sauer or other consumers. The defective Products suffer from a latent Defect at the point of sale.

~~69.~~92. Without an injunction, Defendant will continue to harm Plaintiff Sauers, the members of the California Subclass, and prospective consumers. This is ~~due to the fact that~~because the risk of injury is not adequately disclosed to prospective consumers and even after purchasing, the "repair kit" that customers are forced to install themselves on the Product does not provide adequate peace of mind or guarantee safety from a company that has already deceived consumers once as to the risk latent in the Products.

~~70.~~93. Defendant's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer. ~~and:~~

~~71.~~94. Defendant knowingly and intentionally concealed from Plaintiff Sauers and California Subclass members that the Products contain a latent safety Defect that creates an unreasonable safety hazard, which is particularly dangerous for children.

~~72.~~95. Defendant volunteered information to Plaintiff Sauers and California Subclass members through advertising and other means that the defective Products were safe, durable, and functional products without disclosing facts that would have materially qualified those partial representations.

~~73.~~96. Defendant promoted the high quality and premium features, like the safety bar revealed to be defective, of the d~~D~~efective Products~~Devices~~, despite knowing they were defective, and failed to correct its misleading partial disclosures.

~~74.~~97. Defendant was under a duty to disclose the Defect because of its exclusive knowledge of the Defect before selling the Products and because the Defect resulted in a material and unreasonable safety hazard, especially for children, and because Defendant made partial representations about the Products and misleading representations about the safety and durability

of the Products. This duty is separate and apart from any contractual duty, because its omissions created foreseeable physical risks.

75.98. Defendant's representations omissions were material. Plaintiff Sauer was exposed to Defendant's specific representations about Products before and immediately after purchaseat the point of sale. Plaintiff Sauer specifically relied on representations from Defendant before purchasing or using the defective Product. None of the informational sources Plaintiff Sauer or California Subclass Members encountered — advertisements, websites, external packaging, the online purchase portal, the user manual — disclosed that the dDefective ProductsDevices were defective or that they created an unreasonable safety hazard.

76.99. Plaintiff Sauer and California Subclass members would be wholly unaware of the Defect until they experienced it.

77.100. Absent Defendant's unlawful, unfair, and fraudulent conduct, Plaintiff Sauer and California Subclass members, who were all unaware of the Defect and the unreasonable safety hazard it caused at the time of purchase, would not have purchased the Products, would not have purchased them at the premium prices they did, or would have returned them for a refund. Defendant omitted material information that it was under a duty to disclose and on which Plaintiff Sauer and the California Subclass members relied.

78.101. Through its unlawful, unfair, and fraudulent conduct, Defendant acquired Plaintiff Sauer's money directly and as passed on by its authorized resellers. Plaintiff Sauer and California Subclass members suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent conduct.

~~79.~~102. Defendant's conduct threatens to cause future harm to Plaintiff Sauer~~s~~ and California Subclass members, as prospective consumers continue to be unaware of the latent defect and Defendant's inefficient steps taken to "remedy" the issue.

~~80.~~103. Therefore, there is no adequate remedy for Plaintiff Sauer~~s~~ and California Subclass members under the law, and they seek separate injunctive relief including but not limited to an order or judgment enjoining Defendant from making similar misrepresentations and omissions in the future or from continuing its unfair, unlawful, and fraudulent practice.

**COUNT II**
**VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, et. seq. ("CLRA")**
(On behalf of Plaintiff Sauer and the California Subclass)

~~81.~~104. Plaintiff Sauer hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein

~~82.~~105. Plaintiff Sauer brings this claim individually and on behalf of the California Subclass.

~~83.~~106. Plaintiff Sauer and all California Subclass members are "persons" and "consumers" as defined in Cal. Civ. Code §1761(d).

~~84.~~107. Under Cal. Civ. Code §§ 1761(c) and 1770, Defendant qualifies as a "person" and provided "goods" as defined by §§ 1761(a) and 1770.

~~85.~~108. Plaintiff Sauer and the California Subclass's purchases from Defendant constitutes a "transaction" as defined by Cal. Civ. Code §1761(e).

~~86.~~109. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

~~87.~~110. As alleged herein, Defendant engaged in unfair acts or practices in violation of Cal. Civ. Code §§ 1770(a)(5), (7), and (9) as they involve unfair and deceptive practices related to the sale of defective Products. Specifically, Defendant:

a. Misrepresented the defective Products by representing that the Products are safe and suitable for children and families, and safe to use as intended and by touting the durability and safety features of the Products while omitting the existence of the Defect and unreasonable safety risks, suggesting that the devices had qualities, uses, and benefits that they did not possess; Cal. Civ. Code §1770(a)(5)

b. Misrepresented the quality and standard of the defective Products by representing that the Products were durable and safe, touting the specific defective component as a material feature, and failing to disclose the Defect, thereby misleading consumers into believing the Products met a higher quality standard; Cal. Civ Code §1770(a)(7).

c. Advertised the defective Products with no intention of selling them as described. Cal. Civ. Code §1770(a)(9)

~~88.~~111. Through the design, development, testing, marketing, manufacturing, and sale of the defective Products, as well as through consumer complaints and other information cited herein, Defendant was aware that these Products were defective.

~~89.~~112. Defendant had a duty to disclose the Defect in the Products due to its superior knowledge—gained through research, testing, and consumer feedback—, and because they presented a material safety risk. Instead, Defendant made partial and misleading statements about the Products' quality, premium features, and overall safety. This duty existed separate and aprt from any contractual duty, because its omissions created foreseeable physical risks.

~~90.~~113. Defendant's omissions were significant. Plaintiff Sauer and the California Subclass were exposed to Defendant's failure to disclose the Defect before and immediately after their purchases, during a time when they could have returned the defective Products. Plaintiff Saure relied on Defendant's omissions and representations about the Products in advertisements, online, and during the purchase process. None of the information sources Plaintiff Sauer consulted—whether advertisements, websites, packaging,—suggested that the Products were defective or that the safety bar posed an unreasonable safety risk.

~~91.~~114. Plaintiff Sauer and California Subclass members would be unaware of the Defect until they experienced it firsthand. Had Defendant disclosed the Defect, Plaintiff Sauer and California Subclass members would have known about it and either would not have purchased the defective Products, would have paid significantly less for them, or would have returned them for a refund.

~~92.~~115. Defendant's conduct is ongoing and continuous, making prospective injunctive relief necessary, particularly given Plaintiff Sauer's desire to purchase Defendant's products in the future, provided they can be assured that the products are safe, function as advertised, and that Defendant complies with relevant advertising and warranty laws. As it stands, Defendant's failure to adequately disclose the risk or remedy this risk is deceptive and remains misleading to prospective consumers or repeat consumers or users, such the~~as~~ Plaintiffs.

~~93.~~116. To the extent any of the CLRA claims of Plaintiff Sauer or the California Subclass members claims would otherwise have expired, Plaintiff asserts that these claims are tolled by the delayed discovery rule. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal 4th 797, 807 (2005).

94.117. Plaintiff reserves the right to amend his complaint to add monetary damages claims under the CLRA thirty days or longer after compliance with the notice requirements ofursuant to Cal. Civ. Code § 1782(a), should Defendants fail to meet Plaintiff's demands. Plaintiff sent by Certified Mail, Return Receipt Requested, a notice to comply with said requirements contemporaneously with the filing of this Complainton August 25, 2025. Defendant failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's demand notice. Accordingly, pursuant to §§ 1780 and 1792(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

95.118. Plaintiff and Class Members were harmed by Defendant's violations of the CLRA and are entitled to injunctive and declaratory relief, as they lack an adequate remedy at law. Plaintiff and the California Subclass would consider purchasing Defendant's products in the future if the products were safe, functioned as advertised, and if the Court compels Defendant to comply with all pertinent advertising and warranty laws.

96.119. Additionally, Plaintiff Sauers seeks compensation for attorney fees and costs incurred.

120. Finally, under the CLRA, Plaintiff Sauers seeks a public injunction to protect the general public from Defendant's misleading advertising and omissions and from the sale of these defective Products.

**COUNT III**
**VIOLATION OF NEW YORK GEN. BUS. LAW § 349 (GBL)**
**(On behalf of Plaintiff Lam and the New York Subclass)**

121. Plaintiff Lam hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

122. Plaintiff Lam brings this claim individually and on behalf of the New York Subclass.

123. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

124. The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff Lam and the New York Class seek monetary damages.

125. Defendant marketed the sale of its products nationally and placed it for sale at major retail outlets such as Walmart, Target, Home Depot, Lowes, and others, as well as online through Amazon, Wayfair, and Overstock. As such, the Products' marketing and sales have a nexus with New York.

126. Defendant misleadingly, inaccurately, and deceptively advertised and marketed its Products to consumers by representing that the Products are safe and suitable for children and families, and safe to use as intended and by touting the durability and safety features of the Products while omitting the existence of the Defect and unreasonable safety risks.

127. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff Lam and the New York Class to purchase and pay a premium for the Product when they otherwise would not have.

128. Plaintiff Lam and the New York Class have been injured in that they paid a premium for a Product that posed an unreasonable safety risk. Had they known the truth about the Product, Plaintiff Lam and the New York Class would not have purchased the Product or would have paid significantly less for it. They certainly never bargained for having to take the time necessary to obtain a "repair" for a defective product posing a safety hazard and having to "self-

install" the proffered remedy by the defendant. Accordingly, Plaintiff Lam and the New York Class received less than what they bargained for and/or paid for.

129. Defendant made untrue and/or misleading statements and material omissions willfully, wantonly, and with reckless disregard for the truth.

130. As a result of Defendant's unlawful deceptive acts and practices, Plaintiff Lam and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest and attorneys' fees and costs.

**COUNT IV**
**VIOLATION OF NEW YORK GEN. BUS. LAW § 350 ("GBL")**
**(On behalf of Plaintiff Lam and the New York Subclass)**

131. Plaintiff hereby Lam hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

132. Plaintiff Lam brings this claim individually and on behalf of the New York Subclass.

133. Plaintiff Lam brings this claim individually and on behalf of the New York Class. GBL §350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

134. GBL § 350-a(1) provides, in part, as follows: The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such

representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …"

135. Defendant's omissions of the safety risks of the Products are materially misleading representations since they misrepresent that the Products are safe and suitable for children and families, and safe to use as intended and by touting the durability and safety features of the Products while omitting the existence of the Defect and unreasonable safety risks. As a result of these omissions, reasonable consumers formed the mistaken belief that the Products were safe to use.

136. Defendant was in possession of superior knowledge with the design and manufacturing of the kitchen stepper and, through pre-sale testing, should have known that the safety bar was defective and would pose a health risk to consumers using the product as intended for ordinary use.

137. Defendant's advertising of the Products induced Plaintiff Lam and members of the New York Class to buy the Products. Thus, Defendant made material misrepresentations and omissions about the Products.

138. Plaintiff Lam and the New York Class have been injured in that they paid a premium for a Product that posed an unreasonable safety risk, contrary to Defendant's omissions. Had Plaintiff Lam and the New York Class known the truth about the Products, Plaintiff Lam and the New York Class would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff Lam and the New York Class received less than what they bargained for and/or paid for.

139. Defendant made the foregoing untrue and/or misleading representations willfully, wantonly and with reckless disregard for the truth.

~~97.~~140. As a result of Defendant's unlawful deceptive acts and practices, Plaintiff Lam and the New York Class are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest and attorneys' fees and cost

**COUNT V~~III~~**
**BREACH OF IMPLIED WARRANTIES**
(On Behalf of Plaintiff and the Nationwide Class)

~~98.~~141. Plaintiffs hereby repeat~~s~~, realleges, and incorporate~~s~~ by reference all preceding paragraphs as though fully set forth herein.

~~99.~~142. Plaintiffs bring~~s~~ this count on behalf of themselves~~himself~~ and the proposed Nationwide Class.

~~100.~~143. Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Products.

~~101.~~144. The Products were~~as~~ and are~~is~~, at all relevant times, a "good" within the relevant laws.

~~102.~~145. Defendant knew or had reason to know of the specific use for which the Products, as goods, were~~as~~ purchased.

~~103.~~146. Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Products to be used by Plaintiffs and the proposed Class Members.

147. Defendant provided Plaintiffs and the proposed Class Members with implied warranties that the Products were~~as~~ merchantable and fit for the ordinary purposes for which the Products were~~as~~ used and sold and was not otherwise injurious to consumers, that the Products would pass without objection in the trade, be of fair and average quality, and conform to the

promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiffs and Class Members.

~~104.~~148. The Defect manifested in the Products Plaintiffs purchased – Plaintiff Lam's product failed, and Plaintiff Sauer's product remains unsafe for its intended use per Defendant's own recall instructions – thus breaching the implied warranty at the point of sale.

~~105.~~149. Defendant breached the implied warranty of merchantability because the Products are~~is~~ not fit for their~~its~~ ordinary purpose of being a reasonably safe place for people to safety use as intended. The Product contains the Defect, rendering them ~~Product~~ unsafe to use as intended. Therefore, the Products are~~is~~ not fit for their~~its~~ particular purpose.

~~106.~~150. As instructed by the Recall, Plaintiffs are~~is~~ forced to discontinue use of the Product's safety bar due to the ongoing safety risk.

~~107.~~151. The aforementioned problems associated with the Products constitute safety risks, such that the Products are~~is~~ neither safe nor suitable for children use or be around. Therefore, there is a breach of the implied warranty of merchantability.

~~108.~~152. Moreover, due to the inadequate and overdue nature of the Recall, it is not required and would be futile for Plaintiffs to provide Defendant further opportunity to cure their breach.

~~109.~~153. Plaintiffs and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiffs and each Class Member, on the other hand.

~~110.~~154. Nevertheless, privity is not required because Plaintiffs and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The

retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Products. Thus, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Product and its warranties.

~~111.~~155. Defendant impliedly warranted that the Products wereas durable, safe, suitable for children to use, of merchantable quality, and fit for their intended purpose. These implied warranties included, among other things: (i) a warranty that the Products manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to use; (ii) a warranty that the Products would be fit for theirits intended use while the Products areis being used; and (iii) a warranty that the Products would conform to all of the promises and affirmations of fact on the Product's' label and online advertising.

~~112.~~156. Instead, the Products contains a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Products fails to conform to the promises or affirmations of fact on its label and online advertising.

~~113.~~157. Defendant failed to adequately warn Plaintiffs and Class Members that the Products contained the Defect, wereas not safe or suitable for use, and could cause serious injuries.

~~114.~~158. Defendant breached the implied warranties because the Products wereas and is sold with the Defect.

~~115.~~159. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

~~116.~~160. Plaintiffs and Class Members had no meaningful choice in determining the terms of that unreasonably favored Defendant, who had superior and exclusive knowledge of the

Defect, which existed at the time of sale of the Products. A gross disparity in bargaining power existed between Defendant and Plaintiffs and the Class Members, and Defendant knew or should have known that the Products wereas defective at the time of sale.

~~117.~~161. Contrary to the applicable implied warranties, the Products, at the time of sale and thereafter, wereas not fit for theirits ordinary and intended purpose. Instead, the Products suffered, and continues to suffer, from the Defect as alleged herein.

~~118.~~162. Defendant's failure to adequately repair or replace the dangerous Products caused the warranty to fail in its essential purpose.

~~119.~~163. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

**COUNT IVI**

**UNJUST ENRICHMENT/QUASI-CONTRACT**

(On Behalf of Plaintiff and the Nationwide Class)

(Brought in the Alternative to Count V)

Formatted: French (Canada)

~~120.~~164. Plaintiffs hereby repeats, realleges, and incorporates by reference all preceding paragraphs as though fully set forth herein.

165. Plaintiffs brings this count on behalf of themselveshimself and the Nationwide Class.

~~121.~~166. This Count is brought in the alternative to Count V as an alternative theory of recovery.

~~122.~~167. Plaintiffs and the putative Class Members conferred a benefit on Defendant by purchasing the Products—payments that Defendant knowingly accepted while aware of the Product's' Defect and unfitness for its intended use.

~~123.~~168. Defendant either knew or should have known that the payments rendered by Plaintiffs and Class Members were given with the expectation that the Products would have the qualities, characteristics, and suitability for the use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

~~124.~~169. By its wrongful acts and omissions described herein, including selling the Products, which contained both a Defect and was inoperative for the intended use, Defendant was unjustly enriched at the expense of Plaintiffs and putative Class Members.

~~125.~~170. Defendant's wrongful conduct directly caused Plaintiff~~'~~s' detriment and resulted in Defendant's unjust enrichment, as the benefit it received flowed directly from the misconduct alleged in this Complaint.

~~126.~~171. Defendant has unjustly profited from its unlawful, unfair, and deceptive conduct at the expense of Plaintiffs and the putative Class Members. It would be inequitable and contrary to principles of justice for Defendant to retain the profits, benefits, and other compensation obtained through the sale of the Products, as such enrichment was directly tied to the misconduct alleged herein.

~~127.~~172. Defendant was unjustly enriched by retaining revenues from Plaintiffs' and Class Members' purchases of the Products. Such enrichment is unjust and inequitable because Defendant knowingly manufactured, marketed, and sold defective and dangerous Products while omitting material facts, causing Plaintiffs and Class Members to purchase Products they otherwise would not have bought had the truth been disclosed.

~~128.~~173. Defendant's conduct allows it to knowingly realize substantial revenues from selling the Product at the expense of, and to the detriment of, Plaintiffs and Class Members,

and Defendant's benefit and enrichment. Defendant's retention of these benefits violates fundamental justice, equity, and good conscience principles.

~~129.~~174. Under common law principles of unjust enrichment and quasi-contract, it is inequitable for Defendant to retain the benefits conferred by Plaintiff~~'~~s' and Class Members' overpayments.

~~130.~~175. Plaintiffs and the Nationwide Class seek disgorgement of all profits resulting from such overpayment.

**COUNT VII**
**NEGLIGENT MISREPRESENTATION**
(On behalf of Plaintiffs and the Nationwide Class)

~~131.~~176. Plaintiffs hereby repeat~~s~~, reallege~~s~~, and incorporate~~s~~ by reference all preceding paragraphs as though fully set forth herein.

~~132.~~177. Plaintiffs bring~~s~~ this claim individually and on behalf of the Nationwide Class.

~~133.~~178. As a seller of the Product, Defendant had a duty to give correct information to Plaintiffs and Class Members regarding the truth and accuracy regarding the material facts concerning the serious safety risks posed by the Products, including knowledge of the Defect. Defendant had sole possession and control of this information and had a duty to disclose it accurately to Plaintiffs and Class Members. This duty existed separate and apart from any contractual duty, because its omissions created foreseeable physical risks.

~~134.~~179. Defendant created a special relationship with Plaintiffs and Class Members through its misrepresentations and omissions regarding safety and through its designing, manufacturing, marketing, and selling the Products as a product specifically suitable for children.

~~135.~~180. Defendant intended the sale of the Products not only to affect Plaintiffs and Class Members, but Defendant actually considered the particular needs of caregiving consumers and designed, manufactured, and sold the Products for those consumers to meet their particular needs.

~~136.~~181. Defendant held or appeared to hold unique or special expertise and knowledge of safe Products and touted its decades-long history of experience. Defendant and Plaintiffs, as well as Class Members, had a special relationship of trust and confidence, and Defendant persuaded Plaintiffs and Class Members to purchase the Products based on their misrepresentations and reputation of having expertise and knowledge.

~~137.~~182. Defendant affirmatively misrepresented and omitted material facts regarding the Product~~'~~s' safety, including but not limited to explicit or implicit assurances that the Products were~~as~~ safe and suitable for child use. These false and misleading representations were made for the express purpose of inducing Plaintiffs and Class Members to purchase the Products. Defendant knew or should have known that the Products posed serious safety risks, and yet marketed and sold them~~it~~ as appropriate for use by children, thereby misleading reasonable consumers into believing they~~it~~ met applicable safety standards.

~~138.~~183. Because the Defect in the Products could not be detected until after it manifested, and because Defendant purposefully concealed the defective nature of the Product and the serious safety risks caused by the Defect, Plaintiffs and the Class Members were not reasonably able to discover the Defect, despite their exercise of due diligence.

~~139.~~184. Defendant knew, or otherwise should have known, that the Products contained the Defect and posed serious safety risks.

~~140.~~185. Despite Defendant's knowledge of material facts concerning the existence of the serious safety risks posed by the Products, Defendant actively concealed the serious safety risks from consumers by failing to disclose the serious safety risks to consumers.

~~141.~~186. Defendant omitted, concealed, and failed to disclose to consumers that the Products pose~~s~~ serious safety risks, including that the Product~~'~~s material feature is inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; and/or is capable of causing serious injury and death to children. Rather than disclose this information, Defendant marketed the Products as safe and suitable for their intended purpose.

~~142.~~187. The facts concealed and/or not disclosed by Defendant to consumers, including Plaintiffs and other Class Members, were material, in part, because they concerned an essential aspect of the Products, including the intended use and safety. Such facts affect the conduct of purchasers, and a reasonable person would have considered those facts to be important in deciding whether to purchase the Products. Rather than disclose this information, Defendant marketed the Products as complying with safety standards and regulations, with the utmost manufacturing and design.

~~143.~~188. Defendant intentionally concealed and/or failed to disclose such material facts for the purpose of inducing consumers, including Plaintiffs and other Class Members, to purchase the Product.

~~144.~~189. Plaintiffs and other Class Members, without knowledge of the true nature of the Products, justifiably acted or relied upon the concealed and/or nondisclosed material facts to their detriment, as evidenced by their purchase of the Products.

~~145.~~190. As a direct and proximate result of Defendant's concealment and/or nondisclosure of material facts, consumers, including Plaintiffs and other Class Members have

been damaged as alleged herein, and are entitled to recover damages. Plaintiffs and other Class Members would not have purchased the Products on the same terms had they known that theyit posed serious safety risks to their infants.

146.191. Plaintiffs and Class Members are entitled to all relief the Court finds proper as a result of Defendant's conduct described herein.

**COUNT VIII**
**VIOLATIONS OF MISSOURI MERCHANDISE PRACTICES ACT**
**Mo. Rev. Stat. §§ 407.010, *et seq.***
(On behalf of Plaintiffs and the Nationwide Class)

Formatted: French (Canada)

147.192. Plaintiffs hereby repeats and re-alleges all previously alleged paragraphs, as if fully alleged herein.

148.193. Defendant is a "person" as defined by Mo. Rev. Stat. § 407.010(5).

149.194. Defendant advertised, offered, or sold goods or services in Missouri and engaged in trade or commerce directly or indirectly affecting the people of Missouri, as defined by Mo. Rev. Stat. § 407.010(4), (6) and (7).

150.195. Plaintiffs and Class members purchased or leased goods, i.e. the Products, or services primarily for personal, family, or household purposes.

196. Defendant engaged in unlawful, unfair, and deceptive acts and practices, in connection with the sale or advertisement of merchandise in trade or commerce, in violation of Mo. Rev. Stat. § 407.020(1), as described herein.

151.197. Defendant is headquartered in Missouri and made key marketing decisions and marketed and sold the Products to consumers within Missouri and nationwide.

152.198. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

~~153.~~199. As a direct and proximate result of Defendant's deceptive acts and practices, the Plaintiffs and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the defective Products.

~~154.~~200. ~~The~~ Plaintiffs and Class members seek all monetary ~~and non-monetary~~ relief allowed by law, including actual damages, punitive damages, attorneys' fees and costs, ~~injunctive relief,~~ and any other appropriate relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of ~~himself~~ themselves and all others similarly situated, respectfully request~~s~~ that this Court:

a. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiffs as Class Representatives and appointing the undersigned counsel as Class Counsel;

b. Awarding punitive damages where permitted by statute, in an amount to be determined at trial, due to Defendant's willful and reckless disregard for the safety of consumers despite its knowledge of the Defect;

~~c. Ordering injunctive relief as permitted by law or equity, further permanently enjoining Defendant from continuing the unlawful practices as set forth herein;~~

~~d.~~c. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Classes;

~~e.~~d. Awarding Plaintiffs and Class members compensatory, statutory, actual, and/or monetary damages, including interest, in an amount to be determined at trial;

~~f.~~e. Declaring that Defendant must disgorge, for the benefit of the Class(es), all or part of the ill-gotten profits they received from the sale of the Products;

~~g.~~f. Awarding restitution and other appropriate equitable relief

~~h.~~g. Ordering such other and further relief as may be just and proper.

**JURY DEMAND**

Plaintiffs hereby demands a trial by jury of all claims so triable.

DATED: ~~August 25~~October 23, 2025

Respectfully submitted,

*/s/ Jayson A. Watkins*
Jayson A. Watkins (EDMO Bar # 61434MO)

**SIRI & GLIMSTAD LLP**
Mason A. Barney, 4405809(NY)*
Leslie Pescia, 99674 (KY)*
Jayson A. Watkins, 61434 (MO)
745 Fifth Avenue, Suite 500
New York, NY 10151
Phone: (212) 532-1091
mbarney@sirillp.com
lpescia@sirillp.com
jwatkins@sirillp.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis, 321670(PA)*
Daniel Tomascik, 2412051161(MD)*
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
T: (215) 789-4462
klaukaitis@laukaitislaw.com
dtomascik@laukaitislaw.com

**Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff and the Classes*

**Formatted:** French (Canada)

**Formatted:** French (Canada)

**Formatted:** French (Canada)

**Field Code Changed**